UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| MARVIN ANTON BOXDORFER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:09-cv-0109-DFH-JMS |
| | ) | |
| THRIVENT FINANCIAL FOR LUTHERANS | ) | |
| and THRIVENT INVESTMENT | ) | |
| MANAGEMENT, INC., | ) | |
| | ) | |
| Defendants. | ) | |

ENTRY ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Marvin Boxdorfer resigned his position as a managing partner of Thrivent Financial for Lutherans on May 31, 2007. As required by law, Thrivent filed a Form U-5 with the Financial Industry Regulatory Authority (FINRA). The report asserted that Boxdorfer had violated the firm's accounting policy and that he had failed to report uses of firm resources for unauthorized purposes. FINRA launched an investigation, and Thrivent made additional statements to FINRA investigators. Boxdorfer filed claims for defamation, intentional infliction of emotional distress, and breach of contract in the Marion Superior Court.[1] The

---

[1]Originally, Boxdorfer filed suit against "Thrivent Financial." No such organization exists. Boxdorfer was a registered broker-deal with Thrivent Investment Management, a Delaware corporation, and he was employed by Thrivent Financial for Lutherans, a fraternal benefit society organized under Wisconsin law. Those two parties have since been made the defendants. They are referred to jointly as "Thrivent" for purposes of this motion for summary judgment.

case was properly removed to this court based on diversity jurisdiciton. Boxdorfer is a citizen of Indiana, and defendants are organized in and citizens of other states. Shortly after removal, defendants filed a motion to dismiss or in the alternative for summary judgment. The court considers Thrivent's motion as a motion for summary judgment and grants it on all claims.

### Standard for Summary Judgment

Thrivent filed a motion to dismiss or in the alternative for summary judgment. Thrivent submitted with its motion a series of exhibits well beyond the scope of plaintiff's complaint. Thrivent's arguments relied heavily on those exhibits, leaving something of a mystery as to why Thrivent thought Rule 12(b)(6) might be applicable. In any event, the court has considered those exhibits, so the motion must be treated as a motion for summary judgment. See Fed. R. Civ. P. 12(d); *McCoy v. Gilbert*, 270 F.3d 503, 508 (7th Cir. 2001). The "alternative" designation of the nature of the motion could be unfair under some circumstances, if the opposing party is not sure what he needs to do to respond. In this case, however, Boxdorfer did not object to the possibility of considering the motion as a motion for summary judgment. In fact, he requested and received an extension of time to file his response so that he could conduct discovery.

The purpose of summary judgment is to "pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita*

*Electric Industrial Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Summary judgment must be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The motion should be granted so long as no rational trier of fact could return a verdict in favor of the non-moving party. See *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). When deciding a motion for summary judgment, the court considers those facts that are undisputed and views additional evidence, and all reasonable inferences drawn from them, in the light reasonably most favorable to the non-moving party. See *Anderson*, 477 U.S. at 255. However, a party must present more than mere speculation or conjecture to defeat a summary judgment motion. The issue is whether a reasonable jury might rule in favor of the non-moving party based on the evidence in the record. *Id.* at 251-52.

Undisputed Facts

The statement of facts is not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and the disputed evidence are presented in the light reasonably most favorable to Boxdorfer, the non-moving party. See *Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 150 (2000). The factual record is limited by plaintiff's failure to present additional evidence. The original complaint was verified, which effectively converted it into

an affidavit.  See *Ford v. Wilson*, 90 F.3d 245, 246-47 (7th Cir. 1996) (reversing summary judgment for defendant where plaintiff had relied on a verified complaint as evidentiary support; a verified complaint "converted the complaint . . . into an affidavit").  Following the filing of Thrivent's motion for summary judgment, Boxdorfer requested additional time to conduct discovery.  After that time, Boxdorfer filed an unverified amended complaint but did not submit any additional information with his response to the pleadings.[2]  A complaint is not evidence of anything.  A motion for summary judgment requires that the non-moving party come forth with sufficient facts to allow a trier of fact to return a verdict in his favor.  For purposes of summary judgment, therefore, the original, verified complaint is the only factual evidence presented by Boxdorfer.

Boxdorfer was managing partner for Indiana, Kentucky, and Cincinnati for Thrivent from January 2001 until June 1, 2007.  In this job, he managed three branch offices and 75 to 85 financial consultants.  He decided to seek new employment on January 1, 2007.  Thrivent learned of his desire to leave.  Boxdorfer alleges that "in retaliation," Thrivent subjected him to an audit of his financial records.  Verified Compl. ¶ 8.  Thrivent claims to have found several irregularities in Boxdorfer's accounting practices.

---

[2]In general, an amended complaint "supersedes all previous complaints and controls the case from that point forward" and "wipes away prior pleadings." *Massey v. Helman*, 196 F.3d 727, 735 (7th Cir. 1999).  In this case, the court considers the original verified complaint relevant only for evidentiary purposes.  It is still a signed statement of facts equivalent to an affidavit with respect to factual matters within plaintiff's personal knowledge.

Thrivent told Boxdorfer that it would report the irregularities on Boxdorfer's Form U-5 and submit the information to FINRA.  A report on a Form U-5 is added to a broker's permanent record and is publicly available.  Boxdorfer denied wrongdoing and resigned on May 31, 2007.  Verified Compl. ¶ 12.  At that point, Thrivent was required to file a Form U-5 termination document with FINRA.  The document indicated that Boxdorfer had violated firm policy.  Before submitting the Form U-5, Thrivent contacted Boxdorfer to discuss the proposed language in the report.  On June 14, 2007, Boxdorfer's attorney discussed the proposed language with an attorney for Thrivent.  On June 27, 2007, Boxdorfer's attorney requested that the proposed language be shortened.  Bado Aff., Ex. A.  The language was finalized on June 29, 2007.  Kopka Aff. ¶ 6.  The form as filed stated that Boxdorfer was "permitted to resign" and that he had "violated the firm's regional financial office accounting policy and failed to report certain uses of firm resources for unauthorized purposes."  Kopka Aff., Ex. B.

Following this report, FINRA began an investigation into the allegations.  Boxdorfer asserts that in the course of responding to FINRA's investigation, Thrivent made additional "untrue and unsupported allegations," including that Boxdorfer used Thrivent funds without authority to pay for mortgage payments on his condominium and that he improperly authorized $15,000 to be paid for the personal mortgage of another person.  Verified Compl. ¶ 16.  Boxdorfer asserts that the payment on behalf of the other person had been determined to have been an error made by Wells Fargo and Thrivent months before the end of Boxdorfer's

employment.  Verified Compl. ¶ 17.  On March 11, 2008, FINRA decided not to take action against Boxdorfer.  Kopka Aff., Ex. C.

Boxdorfer also claims that he was denied a bonus owed to him as managing partner for growth of his region.  He alleges that he did not receive his bonus for 2003, which was payable in January 2004.  Verified Compl. ¶ 26.  Thrivent has come forward with evidence that Boxdorfer requested $24,000 for a bonus on January 26, 2004 and that the amount was paid a few days later.  Rosner Aff., Exs. F, G.

*Discussion*

Boxdorfer asserts claims for defamation, intentional infliction of emotional distress, and breach of an employment contract.  The court applies Indiana law.[3]

I.    *Defamation Claims*

---

[3]The parties have briefed only Indiana law, and that approach is consistent with Seventh Circuit and Indiana law.  See *Jean v. Dugan*, 20 F.3d 255, 262 (7th Cir. 1994) (finding Indiana law applied in a libel action where plaintiff lived and worked in Indiana and "the relevant community in which the alleged injury to his reputation occurred was in Indiana"); *Hubbard Manufacturing. Co. v. Greeson*, 515 N.E.2d 1071, 1073 (Ind. 1987) (applying "most significant contacts" test to choice of law for contract claim).  Boxdorfer was an employee working in Indiana who signed his contract in Indiana and would have been harmed primarily in Indiana by the alleged defamation.

Boxdorfer claims that defendants defamed him in the Form U-5 and in additional statements they made to FINRA in the course of its investigation. Thrivent moves for summary judgment based on two theories. First, Thrivent argues that Boxdorfer consented to the language in the Form U-5 through the negotiations between his attorney and Thrivent. Second, Thrivent argues that its communications on the Form U-5 and subsequently to FINRA are privileged against defamation suits.

Consent to the publication of material gives the publisher an absolute privilege that precludes recovery on a defamation claim. *Eitler v. St. Joseph Regional Medical Center South Bend Campus, Inc.*, 789 N.E.2d 497, 500-01 (Ind. App. 2003). According to Thrivent, Boxdorfer consented to the publication in the Form U-5 when Boxdorfer and Thrivent's counsel "agreed to the precise language that would be reflected on Mr. Boxdorfer's Form U-5." Bado Aff. ¶ 6.

Boxdorfer responds in briefing that he "ceased negotiations after coming to the conclusion that the parties were not going to reach a mutually agreeable decision." Pl. Br. 6-7. Thrivent is correct that this "fact" is not actually in the factual record, but the conclusion could be reasonably drawn by a fact-finder even with the admissible facts the court considers in deciding this motion. Boxdorfer has sworn in his verified complaint that the statement on the Form U-5 is factually incorrect. When his employment ended, Boxdorfer had little leverage over Thrivent, which had a mandatory duty to file the form. To the extent the

parties were negotiating on language, they were not equal parties, and Boxdorfer's participation in the process does not show, at least as a matter of law, that he consented to the final version.

Boxdorfer had no authority to prevent the publication of a report required by Thrivent's membership in FINRA.   A claim for defamation has four basic elements:  (1) a communication with a defamatory imputation; (2) malice; (3) publication; and (4) damages.  *Eitler*, 789 N.E.2d at 500.  The absolute privilege referenced by Thrivent arises in situations where the plaintiff has consented to the publication of material that he later claims was defamatory.  In *Eitler*, the plaintiff had resigned from her job and later claimed that the employer had defamed her in responding to a confidential reference check by a prospective new employer. The plaintiff had signed an authorization for the reference check that included a release of all parties from liability for furnishing or receiving information.  The court of appeals affirmed summary judgment for the defendant on the defamation claim based on the absolute privilege of consent.  This case is not comparable because the summary judgment record does not show that Boxdorfer consented to the final version of the Form U-5.  His consent was not needed.

Section 583 of the Restatement (Second) of Torts, relied upon by Thrivent, states that the privilege applies based on the "consent of another to the *publication* of defamatory matter."  (Emphasis added.)  In this case, Thrivent's decision to publish was dictated not by Boxdorfer's assent but by its obligations as a member

of FINRA.   Boxdorfer's claim does not fall under this line of cases in which plaintiffs consented to the publication without full knowledge of what material would be published.

To the extent that Boxdorfer was allegedly consenting to anything, it was to the substance of the alleged defamatory statements.  Since Boxdorfer vehemently denies the truthfulness of the statements, and since he no doubt had little bargaining power in the negotiations over what to include on a Form U-5, a reasonable jury could find that he did not consent to the truth of the alleged statements.   Thrivent's statement is not protected by an absolute privilege based on consent, at least as a matter of law.[4]

Thrivent also argues that its statements on the Form U-5 are entitled to a qualified privilege.  See *Baravati v. Josephthal, Lyon & Ross, Inc.*, 28 F.3d 704 (7th Cir. 1994).  Since members of FINRA, such as Thrivent, "are *required* to state the reason for termination on the U-5, denial of the privilege puts them in a hard place, where if they state a reason discreditable to the employee they may be sued

---

[4]The "consent" argument could apply only to Boxdorfer's defamation claim arising from the Form U-5 itself.  There is no evidence that Boxdorfer consented to any later communications with the FINRA investigators alleging specific misappropriations of money.  Nor could the "consent" to the Form U-5 have given permission for the subsequent, allegedly defamatory statements Thrivent made to the FINRA investigators.

for libel while if they lie about the reason they will be violating the association's rules."  *Id.* at 708.[5]

Under Indiana law, the qualified privilege can be lost if "(1) the communicator was primarily motivated by ill will in making the statement, (2) there was excessive publication of the defamatory statements, or (3) the statement was made without belief or grounds for belief in the truth."  *Bals v. Verduzco*, 600 N.E.2d 1353, 1356 (Ind. 1992).  The plaintiff has the burden of overcoming the privilege by showing it was abused.  *Id.*

Boxdorfer submits that Thrivent was primarily motivated by ill will and that the statement was made without belief or grounds for belief in the truth.  The problem for Boxdorfer is that he has come forth with no evidence to support these allegations.  His original complaint, the only submitted evidence on this record, states only that Thrivent "alleged several irregularities" in Boxdorfer's accounting practices and that Boxdorfer denied the irregularities.  By themselves, those facts

---

[5]*Baravati* actually applied Illinois defamation law in a case upholding an arbitration award based on a defamation claim against a securities firm. Baravati's attorney, future President Barack Obama, successfully argued that statements on a Form U-5 should be protected by only a qualified privilege, not an absolute privilege.  Boxdorfer agrees with *Baravati* that a qualified privilege exists, and Indiana law on qualified privilege would lead to a similar result as in *Baravati*.  In Indiana, a qualified privilege "protects communications made in good faith on any subject matter in which the party making the communication has an interest or a duty, either public or private, either legal, moral, or social, if made to a person having a corresponding interest or duty."  *Coachman Industries, Inc. v. Dunn*, 719 N.E.2d 1271, 1276 (Ind. App. 1999).  The requirement to submit the Form U-5 is a private duty of Thrivent and protected by a qualified privilege.

would not allow a reasonable trier of fact to find that Thrivent was "primarily motivated by ill will."

Boxdorfer argues that the actual Form U-5 provides the evidence that Thrivent acted without belief or grounds for belief in the truth of the statement. The Form U-5 includes the alleged defamatory statement but also states that Boxdorfer was not under internal review for "fraud or wrongful taking of property." In addition, Section 7-F of the form states that Boxdorfer's departure was not following allegations of fraud.  Boxdorfer argues:  "Based on these inconsistent positions, it is unlikely that Defendants believed that Plaintiff 'failed to report certain uses of firm resources for unauthorized purposes.'"  Pl. Br. 9.

Considering the documented weeks-long discussion between Thrivent and Boxdorfer's attorneys about the exact language for the Form U-5, it is not possible that Thrivent did not know exactly what it was saying in the final submitted version.  The "inconsistencies" that Boxdorfer highlights are actually just a showing that Thrivent did not consider the alleged wrongdoing by Boxdorfer to rise to the level of fraud. The lack of ongoing investigation is understandable.  Thrivent had already completed an audit before Boxdorfer's employment ended.  The alleged inconsistencies in the Form U-5 could not allow a reasonable jury to find that the alleged defamatory statement was made without belief or grounds for belief in the truth.

Boxdorfer's claims about the communications with FINRA also fail due to a lack of evidence to overcome Thrivent's qualified privilege.[6]  The first alleged defamatory statement was that Boxdorfer used Thrivent funds to pay for mortgage payments on his condominium.  Assuming for purposes of summary judgment that the statement was false, Boxdorfer has come forward with no evidence that would allow a reasonable jury to find that Thrivent was primarily motivated by ill will or that the statement was made without belief or grounds for belief in the truth.

The original verified complaint included more discussion of the second allegedly defamatory statement given to FINRA.  That statement was Thrivent's contention that Boxdorfer improperly authorized $15,000 paid to Wells Fargo Bank for the personal mortgage of Dennis Herman.  Boxdorfer states:  "The issue of Mr. Herman's payments had been determined to be an error made by Wells Fargo and Thrivent months before Mr. Boxdorfer's resignation."  Verified Compl. ¶ 17.  This is the total extent of Boxdorfer's evidence that the statement was defamatory.  He offers no further details of the transaction, no documents related

---

[6]Thrivent argues that the statements to FINRA during the investigation are entitled to an absolute privilege.  It relies on dicta from *Baravati* stating: "We may assume that when [FINRA] in the discharge of these duties investigates or adjudicates or imposes sanctions with respect to suspected violations of the rules that it enforces, the participants in those proceedings are entitled to the absolute privilege to the same extent as in judicial proceedings."  *Baravati*, 28 F.3d at 708.  Since Boxdorfer acknowledges that the communications were entitled to a qualified privilege, and because summary judgment is appropriate under that standard, the court expresses no opinion on whether the communications during the FINRA investigation were entitled to an absolute privilege.

to the transaction, and nothing else to corroborate this one sentence.   Since
Thrivent is entitled to a qualified privilege, Boxdorfer needed to come forward with
sufficient evidence that the statement was made without belief or grounds for
belief in the truth.   The burden of this showing is on Boxdorfer, see *Bals v.
Verduzco*, 600 N.E.2d at 1356-57, and one unsupported assertion is not sufficient
to survive summary judgment.   The mere statement that this problem had been
identified as not Boxdorfer's fault is not proof that at the time Thrivent made the
allegedly defamatory statement to the FINRA investigators, it did so without belief
or grounds for belief in the truth.   This one fact alleged by Boxdorfer without any
other supporting evidence to undermine Thrivent's conduct in the investigation
is not sufficient to allow a reasonable trier of fact to reject Thrivent's qualified
privilege.

II.      *Intentional Infliction of Emotional Distress*

Boxdorfer also brings a claim for intentional infliction of emotional distress
based on the same statements he alleges were defamatory.   To avoid summary
judgment on this claim, plaintiff must offer evidence that the defendant (1)
engaged in extreme and outrageous conduct (2) intentionally or recklessly, which
(3) caused (4) severe emotional distress to plaintiff.   *Bradley v. Hall*, 720 N.E.2d
747, 752 (Ind. App. 1999). Indiana courts have set a high standard for the level
of conduct necessary to qualify as extreme and outrageous. See *Cullison v. Medley*,
570 N.E.2d 27, 31 (Ind. 1991) (affirming summary judgment for defendant on this

theory after defendant carried gun in a holster for confrontation with plaintiff and grabbed for the gun and shook it at plaintiff without removing it from holster).  To support a claim of this nature, there must be evidence of extreme and outrageous conduct.  *McCreary v. Libbey-Owens-Ford Co.*, 132 F.3d 1159, 1166-67 (7th Cir. 1997).  The conduct must be so offensive and extreme in character and degree as to be regarded as atrocious and intolerable.  *Lachenman v. Stice*, 838 N.E.2d 451, 456-57 (Ind. App. 2005); *Bradley v. Hall*, 720 N.E.2d at 752-53.  Boxdorfer offers no case where similar conduct was deemed sufficiently outrageous to allow a claim to survive summary judgment on the issue of intentional infliction of emotional distress.  The alleged conduct by Thrivent simply does not rise to the level necessary for Boxdorfer to maintain a claim for intentional infliction of emotional distress.  Thrivent is entitled to summary judgment on this claim.[7]

III.    *Claim for Unpaid Bonus*

Boxdorfer's final claim is an allegation that Thrivent failed to pay him a "growth bonus" that was earned in 2003 and payable in 2004.  Boxdorfer's original verified complaint stated only that Thrivent's Vice President of Sales James Thompsen "contracted with all the managing partners at a managing partner meeting."  Verified Compl. ¶ 37.  He attached to the amended complaint

---

[7]Boxdorfer's claim for intentional infliction of emotional distress could be seen as an attempt to avoid the qualified privilege doctrines of defamation law. The same powerful reasons that support the protection of qualified privilege under defamation law in many contexts should apply with equal force to claims for intentional infliction of emotional distress based on the same statements.

a "Managing Partner Employment Agreement," a "Managing Partner Compensation Memo," and a 2002 letter regarding "2003 RFO Transitional Compensation."

The parties dispute whether Boxdorfer's contract claim is barred by the statute of limitations.   A breach of contract claim relating to the "terms, conditions, and privileges of employment except actions based upon a written contract" has a statute of limitations of two years.  Ind. Code § 34-11-2-1.  The statute of limitations for a claim for breach of a written employment contract, however, is ten years.  Ind. Code § 34-11-2-11.

In this case, Boxdorfer had a written employment contract with Thrivent called the Management Partner Employment Agreement.  The actual bonus that Boxdorfer claims he did not receive was based upon the July 16, 2002 memorandum that was an unsigned document.  Most of the cases the parties cite hold that such an unsigned memorandum in an employment relationship that is based on an oral contract are considered to be merely oral contracts subject to the two-year statute of limitations.  See *Knutson v. UGS Corp.*, 526 F.3d 339, 340-41 (7th Cir. 2008) (holding that claim for commissions earned according to a written compensation plan that was not signed was limited to a two-year statute of limitations under Indiana law where there was no written employment contract); *Kemper v. Warren Petroleum Corp.*, 451 N.E.2d 1115, 1117 (Ind. App. 1983) (holding that the statute "provides a two year limitation upon all actions *relating* to the employment relationship except where there is a written employment

contract"); *Indiana v. Puckett*, 531 N.E.2d 518, 525-26 (Ind. App. 1988) (finding two years was appropriate statute of limitations even where "dispute at issue is based upon a written rule" where employment was not based on a written contract).

In this case, Boxdorfer had a written employment contract. Thrivent argues that since the bonus was not promised in the employment contract, the dispute falls under the two-year statute of limitations. The Indiana Court of Appeals laid out a sensible approach for a court to analyze this issue: "We interpret this provision to require that all actions relating to oral terms, oral conditions and oral privileges of employment be brought within two (2) years; all actions based upon written terms, written conditions and written privileges are excepted so long as there is a written contract of employment." *Majd Pour v. Basic American Medical, Inc.*, 555 N.E.2d 155, 160 (Ind. App. 1990).

Since Boxdorfer has a written employment contract, his case is unlike *Knutson*, *Kemper*, and *Puckett*. The Managing Partner Employment Agreement had a section on compensation stating: "The Society will compensate the Managing Partner for the performance of his or her duties as a managing partner in accordance with the terms and provisions of the Society's Managing Partner Compensation Memo." Am. Compl., Ex. C. The 2002 Managing Partner Compensation Memo highlighted the compensation and some bonus possibilities. The crucial letter for Boxdorfer's contract claim is a July 16, 2002 letter for "2003

RFO Transitional Compensation." That letter laid out the "PC Growth bonus" that Boxdorfer asserts he never received.

The promise of the 2003 PC Growth bonus was a written promise incorporated into Boxdorfer's written employment contract. Under *Majd Pour*, this arrangement leads to application of a ten-year statute of limitations. Thrivent cites no case where an employee with a written employment contract and a written letter explaining a compensation scheme somehow was receiving a benefit from an oral contract. Thrivent's promise to pay a PC Growth bonus was not an oral contract. The ten-year statute of limitations applies.

Nonetheless, summary judgment is appropriate because the undisputed evidence shows that Boxdorfer actually received the bonus in question.[8] Boxdorfer has come forward with no evidence outside his initial verified complaint. In that complaint, he alleged that Thrivent failed to pay an annual growth bonus based on 2003 results that amounts to 1.75% of any increased revenue. Verified

---

[8]Thrivent raised the defense that it actually paid the bonus only in its reply brief. Ordinarily the court will not consider a new ground for summary judgment first raised in a reply brief. In this case, however, whether the promised bonus was actually paid seems to present a very simple factual question, and Thrivent came forward with clear documentation showing it was in fact paid. Local Rule 56.1(d) allows the filing of a surreply brief as a matter of right where "in reply, the moving party relies upon evidence not previously cited." Boxdorfer did not object or respond to the Rosner affidavit. Boxdorfer had an opportunity to object to the evidence or rebut it in a surreply brief but chose not to respond. The failure to object and the relative simplicity of the question allow the court to find that the bonus was paid without requiring a further round of briefing.

Compl. ¶ 25.  The bonus was payable in January 2004.  Verified Complaint ¶ 40.
Thrivent has provided documentary evidence that Boxdorfer requested a bonus
on January 26, 2004 for $24,000 that was approved and subsequently paid.
Rosner Aff., Exs. F, G.   Based on this record, Thrivent is entitled to summary
judgment on the claim for unpaid bonus money.

*Conclusion*

Defendants' motion for summary judgment (Dkt. No. 14) is granted as to all counts.  Final judgment will be entered accordingly.

So ordered.

Date: August 10, 2009

_____

DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Brett E. Nelson
PLEWS SHADLEY RACHER & BRAUN
bnelson@psrb.com

Melissa Raphan
DORSEY & WHITNEY LLP
raphan.melissa@dorsey.com

Philip David Sever
SEVER/STOREY
Phil@severstorey.com